UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREN GOHL, as Next Friend of
JAYDEN GOHL,

       Plaintiffs,

                                        Case No. 12-CV-15199

v.

                                        HON. MARK A. GOLDSMITH

LIVONIA PUBLIC SCHOOLS et al.,

       Defendants,

and

M.D. DOE, by her Next Friend FATHER
OF M.D. DOE, et al.,

       Plaintiffs,

                                          Case No. 13-CV-11687

v.

                                        HON. JUDITH E. LEVY

LIVONIA PUBLIC SCHOOLS, et al.,

       Defendants,

and

TERRI ROEDER, as Next Friend of
CAYDEN TELERICO,

       Plaintiffs,

                                        Case No. 13-CV-12012

v.

                                        HON. LINDA V. PARKER

LIVONIA PUBLIC SCHOOLS, et al.,

       Defendants.

_____/

1

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT MOORE'S MOTION**
**FOR PHYSICAL AND MENTAL EXAMINATION PURSUANT TO**
**RULE 35(a)(2) (Dkt. 148)**

## I.  INTRODUCTION

These three cases have been consolidated for purposes of discovery.  See 10/7/13 Order
(Dkt. 67).[1]  Plaintiffs in these cases allege that, during the 2010-2011 and/or the 2011-2012
school years, Defendant Sharon Turbiak, a former teacher at Webster Elementary School in the
Livonia Public School District ("LPS"), physically and emotionally abused students who were in
the LPS Moderate Cognitive Impairment program.  Plaintiffs further allege that co-Defendants
were aware of the abuse, but failed to act to protect those children.

This matter is presently before the Court on Defendant Shellie Moore's motion for
physical and mental examination pursuant to Rule 35(a)(2) (Dkt. 148).  Plaintiffs have filed a
response to Defendant's motion (Dkt. 151), to which Defendant filed both a reply (Dkt. 155) and
supplemental brief (Dkt. 159).  Because the Court would not be aided by oral argument, the
motion will be decided based on the parties' briefing.  See E.D. Mich. L.R. 7.1(f)(2).  As
explained fully below, the Court grants Defendant's motion, in part, and denies it, in part.

## II.  BACKGROUND

Defendant Moore states that Plaintiffs' allegations of both present and future physical and
mental injury have placed their physical and mental conditions in controversy.  Def. Br. at 12.
Consequently, Defendant has requested that Plaintiffs submit to independent medical
examinations, to be performed by Dr. Jennifer Huffman, Ph.D.  Id.  According to Defendant, the
examination would consist of two parts.  First, Dr. Huffman would interview the parents without

---

[1] All docket entries in this Opinion and Order are from the docket in Gohl v. Livonia Public
Schools, et al., No. 12-15199.

Plaintiffs present, during which Dr. Huffman would explain the testing and procedure to the parents. Def. Mot. at 4. Second, Dr. Huffman would perform psychological testing of Plaintiffs. Id.

Although Plaintiffs have agreed to examinations, Plaintiffs have sought to include the following conditions: (i) notice of the testing procedures and a reasonable opportunity to object; (ii) permission to record the examinations and/or permission for Plaintiffs' parents to observe the examinations; (iii) reasonable scheduling accommodations for testing; and (iv) no examination of Plaintiffs' parents. Pls. Br. at 3, 6; Def. Br. at 12. Because Defendant opposes these conditions, the present motion was filed.

### III. STANDARD OF DECISION

Pursuant to Federal Rule of Civil Procedure 35, the Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). This Rule also allows the Court to order the examination of an individual who is in a party's custody or legal control. Id. To secure such an order, the moving party has the burden of demonstrating that: (i) the opposing party's physical or mental condition is in controversy, and (ii) there is good cause to require the opposing party to submit to the examination. Benchmaster, Inc. v. Kawaelde, 107 F.R.D. 752, 753 (E.D. Mich. 1985); Fed. R. Civ. P. 35(a)(2)(A) ("The order [for examination] may be made only on motion for good cause and on notice to all parties and the person to be examined."). A plaintiff clearly places his or her "mental or physical injury . . . in controversy" when he or she seeks damages for a mental or physical injury, thereby providing "the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf

v. Holder, 379 U.S. 104, 119 (1964) (citation omitted) (recognizing that, in such situations, the

two requirements for an examination can be satisfied based on the pleadings alone).

## IV. ANALYSIS

Plaintiffs are children between the ages of six and nine years old, all of whom are alleged

to have certain congenital disorders or medical conditions, including Down syndrome,[2] cri-du-

chat syndrome,[3] and hydrocephalus.[4]  Pls. Br. at 6.  There is no dispute that Plaintiffs' physical

and mental conditions are in controversy, and that examinations are appropriate.  Pls. Resp. at 4;

---

[2] Plaintiff Cayden Telerico was born with Down Syndrome and suffers from a congenital heart defect known as atrial septal defect ("ASD"), as well as a club foot, asthma, severe obstructive sleep apnea, and mobility issues.  See No. 13-12012, Compl. ¶¶ 2(b)-(d) (Dkt. 1).  According to the Mayo Clinic, "Down syndrome is a genetic disorder caused when abnormal cell division results in extra genetic material from chromosome 21.  This genetic disorder, which varies in severity, causes lifelong intellectual disability and developmental delays, and in some people it causes health problems."  Diseases & Conditions, Down Syndrome: Definition, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/down-syndrome/basics/definition/con-20020948 (last visited March 27, 2015).

[3] According to the National Human Genome Research Institute, cri du chat syndrome "is a rare genetic condition that is caused by the deletion (a missing piece) of genetic material on the small arm (the p arm) of chromosome 5. . . .  The clinical symptoms of cri du chat syndrome usually include a high-pitched cat-like cry, mental retardation, delayed development distinctive facial features, small head size (microcephaly), widely-spaced eyes (hypertelorism), low birth weight and weak muscle tone (hypotonia) in infancy."  Learning About Cri du Chat Syndrome, Nat'l Human Genome Research Inst., http://www.genome.gov/19517558 (last visited March 27, 2015).  Plaintiffs do not specify which particular Plaintiff actually has cri-du-chat syndrome.  Plaintiffs M.D. Doe, C.W. Doe, and K.H. Doe merely state that they "each suffer from mental and physical disabilities."  No. 13-11687, Compl. ¶ 49 (Dkt. 1).

[4] Plaintiff Jayden Gohl was born with hydrocephalus.  See No. 12-15199, Second Am. Compl. ¶ 18 (Dkt. 78).  According to the National Institute of Neurological Disorders and Stroke, hydrocephalus "is a condition in which the primary characteristic is excessive accumulation of fluid in the brain. . . .  The excessive accumulation of [cerebrospinal fluid] results in an abnormal widening of spaces in the brain called ventricles.  This widening creates potentially harmful pressure on the tissues of the brain."  Hydrocephalus Fact Sheet, Nat'l Inst. of Neurological Disorders & Stroke, http://www.ninds.nih.gov/disorders/hydrocephalus/detail_hydrocephalus.htm#260213125 (last visited March 27, 2015).

Pls. Br. at 6. Therefore, what must be decided is the appropriateness of the conditions, which are now considered, in turn.

**A. Condition One — Providing a list of all testing to be performed before the examinations, as well as providing an opportunity to object to any unreasonable testing or activity**

Plaintiffs request that Defendant provide a list of all testing that might be performed on Plaintiffs, and that Plaintiffs be afforded the opportunity "to object to any testing or activity which they believe to be unreasonable." Pls. Br. at 6-7. Plaintiffs note, however, that "[i]f these are true neuropsychological examinations, such objections would obviously be limited." Id. at 7 n.4.

Regarding the first portion of this condition, the Court finds that there is no genuine dispute among the parties. Plaintiffs request that they be informed of the testing procedures before the examinations, and Defendant claims that the first session of the examinations would consist of an interview, during which Defendant's expert would "explain the testing and procedure to the parents." Def. Mot. at 4. Because the parents would be notified of the examination procedures before the examination itself, the Court finds that no further notification condition is warranted in this case.

As for Plaintiffs' condition that the parents can reasonably object to examination procedures, Plaintiffs have failed to provide any basis for believing the Dr. Huffman would perform any test that was not appropriate. Dr. Huffman will be available for a deposition, and any possible deficiencies or inappropriateness in the testing can be explored at that time. Therefore, the Court finds that Plaintiffs' first proposed condition is not warranted in this case.

**B. Condition Two — Allowing Plaintiffs' parents to observe the examinations, or, in the alternative, to record the examinations**

Unless the opposing party demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination. See Lahar v. Oakland Cnty., No. 05-72920, 2006 WL 2269340, at *8 (E.D. Mich. Aug. 8, 2006) (recognizing that "the majority of federal courts decline to allow either recording or an observer, absent a showing of a special need or good reason"); accord Elder v. Harrison Twp., No. 10-cv-13144, 2014 WL 6668696, at *5 (E.D. Mich. Nov. 24, 2014) (recognizing that the majority of federal courts do not permit routine recordings of examinations "absent demonstrated special circumstances"). The party seeking to allow an observer or recording of an examination bears the burden of demonstrating either a special need or good cause for the request. See Williams v. Serra Chevrolet Auto., LLC, No. 12–11756, 2013 WL 3467314, at *1 (E.D. Mich. July 10, 2013) (Majzoub, Mag. J.).  A party may demonstrate a special need or good cause "when bias exists or when a party is incompetent." Id.; see also Ardt ex. rel. Parker v. Allstate Ins. Co., No. 09-14247, 2011 WL 768294, at *2 (E.D. Mich. Feb. 28, 2011).

Plaintiffs request that Plaintiffs' parents be allowed to observe the examinations or, in the alternative, that the examinations be recorded.  Pls. Br. at 7.  Plaintiffs rely on the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct ("APA Ethical Principles") in support of their contention that a recording condition is reasonable.  Id.  In particular, Plaintiffs cite to a portion of the APA Ethical Principles concerning the audio or visual recording of individuals, which notes that a psychologist must "obtain permission from all such persons or their legal representatives" before recording.  APA Ethical Principles at 7 (Dkt. 151-4).  According to Plaintiffs, recording the examination will ensure that the parents do not interfere with the testing and that Dr. Huffman will not conduct any improper testing.  Id.

Plaintiffs further claim that Dr. Huffman is not a "neutral evaluator," because Dr. Huffman was hired "to evaluate the Plaintiffs for the purpose of refuting any claims that they were harmed." Id. at 8. Given Plaintiffs' cognitive impairments and their inability to testify about the examinations, Plaintiffs argue that the presence of an observer or recording of the examinations "is the only means to protect these Plaintiffs." Id. at 9.

Defendant argues that Plaintiffs have failed to show a special need or good cause to allow either the recording or observation of the examinations. Def. Br. at 14. Defendant also claims that Plaintiffs' experts, at least in one instance, did not record the interviews or allow the parents to observe the examinations that Plaintiffs' experts previously conducted. Def. Mot. at 5; Roeder Dep. at 6-8 (cm/ecf pages) (Dkt. 148-6).

Furthermore, Defendant relies on the affidavit of her expert, Dr. Huffman, in support of her argument that allowing a third-party observer or recording would be inconsistent with the national standards for neuropsychological examinations. See Def. Mot. at 4-5 (stating that "[t]he presence of an observer or recorder recording the examination is inconsistent with the standard protocols observed by most psychologists and the standard set by the [APA] and would create a distinct potential for distraction and/or interruption of the examination," and "may also raise issues as to the appropriate [sic] and interpretation of the test administered"); Def. Br. at 12 ("As is set forth in Dr. Huffman's affidavit attached hereto, such conditions are not consistent with the professional standards of practice of neuro-psychologists and would substantially interfere with accurate examination results.").

### a. Presence of Third-Party Observer During Examinations

In this case, the Court finds that Plaintiffs have demonstrated a special need to allow the presence of a third-party observer during the examinations. Plaintiffs are young children, all

between the ages of six and nine years old, with cognitive deficiencies, including Down syndrome, cri-du-chat syndrome, and hydrocephalus.  Pls. Br. at 6.  Their young ages and cognitive incompetence satisfy the special-need requirement for having a third-party observer during the examinations.  See Ardt, 2011 WL 768294, at *2 (holding that the plaintiff had demonstrated a "special need" for a third-party observer where the plaintiff had been adjudged legally incompetent and was under the care of a court-appointed guardian).  At least two concerns justify a third-party observer:  (i) parents are understandably reluctant to allow their minor child to be left alone with a person hired by an adversary who does not necessarily have the child's welfare as a paramount interest, and (ii) unlike a competent subject, an incompetent examinee would not be available to rebut the examiner's testimony regarding what had transpired during the examination, thereby leaving the record incomplete on matters that might touch on suggestiveness, bias, or other tainting of the examination.

Defendant's reliance on Dr. Huffman's affidavit is misplaced.  At the outset, the Court notes that Dr. Huffman's sources in support of her contentions are not attached to the affidavit, and the vast majority of them are not readily accessible by the Court to independently verify her claims.  Based on this record, the Court is unable to assign much weight to Dr. Huffman's opinions concerning the national standards for neuropsychological examinations and third-party observers.

Moreover, the concerns voiced in Dr. Huffman's affidavit about a third-party observer or recording of the examination are not well-taken. Those concerns include the following: (i) allowing either an observer or recording would be inconsistent with the APA Ethical Principles; (ii) a third-party observer may potentially distract and interrupt the examination; (iii) a third-party observer may potentially influence the collection of normative data, as well as potentially

8

preclude the valid interpretation of test results; and (iv) observing or recording the examinations may raise test security issues. The Court finds these concerns not justified, on this record.

First, the APA Ethical Principles do not specifically address the ethical implications of allowing a third party to be present and to observe a neuropsychological examination. In fact, the APA Ethical Principles expressly condemn as unethical only surreptitious or deceptive recording, thereby suggesting that recording of an examination for which informed consent has been obtained beforehand is not ethically problematic. See APA Ethical Principles at 6-7, 10-11.

Second, the Court is cognizant of the risks inherent in allowing a third party to observe a neuropsychological examination, including the possibility of distraction or interruption. See 8B Charles Alan Wright et al., Fed. Practice & Procedure § 2236 at 292-293 (3d 2010) ("[T]he presence of, and possible interference by, an attorney or other representative of the examined party might disrupt, or defeat the purpose of, the examination. This concern may be heightened during a psychiatric examination."); William Scott Wyatt & Richard A. Bales, The Presence of Third Parties at Rule 35 Examinations, 71 Temp. L. Rev. 103, 112-113, 128-129 (1998). But a court warning to observers that they must not interfere has been found to be sufficient to minimize this risk. See Ardt, 2011 WL 768294, at *2. Therefore, the Court expressly warns Plaintiffs that, should a third-party observer interfere with an examination, or otherwise act inappropriately, Plaintiffs run the risk of significant sanctions, including "the risk of being assessed costs for a failed examination." Id.

Third, Dr. Huffman's concerns that a third-party observer's presence would influence the collection of examination data, or the interpretation of that data, are completely speculative, as evidenced by the numerous grammatical qualifiers present in the affidavit. See Huffman Aff. ¶ 6 (mentioning "the potential influence of the presence of a third party observer . . . upon normative

data"); id. ¶ 7 (stating that a third-party observer or recording "may prevent the examinee's performance from being compared to established norms and potentially precludes valid interpretation of the test results"); id. ("Observer effect can be such that performance on more complex tasks decline in the observer's presence[.]"); id. ¶ 8 ("Observer effects can be magnified by the presence of involved parties who have a significant relationship with the examinee[.]"); id. ¶ 9 ("The presence of a third party observer during formal testing may represent a threat to the validity and reliability of the data . . . and may compromise the valid use of normative data in interpreting test scores."). These speculative and conclusory statements do nothing more than identify "potential" problems; there is no indication how likely any such problem might be. Nor do these statements explain how a third-party observer would influence the collection or interpretation of Plaintiffs' test results.

Fourth, the Court recognizes that there is a genuine concern within the neuropsychological community "to maintain test security" and "protect the uniqueness of" neuropsychological test procedures. See Official Position Statement of the National Academy of Neuropsychology: Test Security, 15.5 Archives of Clinical Neuropsychology 383 (2000).[5] While such an apprehension may be true in the abstract, Dr. Huffman's concern about test security fails to take into account the fact that her testing procedures will be subject to discovery and trial. Plaintiff's counsel will be entitled to learn of it to conduct an appropriate deposition of Dr. Huffman, and, should these cases proceed to trial, her testing procedures will be more widely known. The solution is obviously a protective order, a device that is widely used to protect sensitive information from wide-scale public dissemination. See Fed. R. Civ. P. 26(c); Flagg ex

---

[5] Available at https://www.nanonline.org/docs/PAIC/PDFs/NANPositionSecurity.pdf.

rel. Bond v. City of Detroit, 268 F.R.D. 279, 286 n.7 (E.D. Mich. 2010) (noting that protective orders that limit public disclosure of sensitive information "are fairly routine in civil litigation").

Finally, Defendant's brief fails to explain how significant the testing is to the defense's case. If the testing is only to confirm that Plaintiffs actually do suffer from the conditions that they allege, the testing would appear to be of relatively little significance, as such confirmation can be secured from existing medical records and from treating health professionals. Without demonstrating the specific importance of the testing to this case, Defendant fails to supply an important factor that would assist the court in weighing all factors that bear on the propriety of allowing observers as a condition of the examination. Morton v. Haskell Co., No. 94-976-CIV-J-20, 1995 WL 819182, at *3 (M.D. Fla. Sept. 12, 1995) ("The Court . . . has the discretionary authority to impose a variety of conditions which, balancing the factors in each individual case, ensure that the interests of justice are obtained.").

Considering all matters properly made of record through the parties' submissions, the Court finds that allowing an observer at the examinations is appropriate.

### b.  Recording of Examinations

Although Plaintiffs have demonstrated a special need for a third-party observer, the Court finds that Plaintiffs have failed to demonstrate either good cause or a special need to have the examinations recorded. Plaintiffs' justification for the recording of an examination — maintaining the integrity of the testing procedure by keeping both the third-party observer and the neuropsychologist honest — would apply regardless of whether the individual subjected to the examination was incompetent. And while a defendant's psychological expert may not be truly "neutral" or "independent," given the adversarial nature of litigation in the United States, the mere fact that parties are in opposition and hire experts does not, in itself, constitute a

11

sufficient bias on behalf of the expert that would require recording of the examinations.  See Elder, 2014 WL 6668696, at *5 ("Despite allegations regarding the inherently adversarial nature of such exams, absent special need or good cause shown, as courts in this District and in the majority of federal courts have recognized, routine recordings of such exams are not contemplated by [] Rule [35] and are not permitted absent demonstrated special circumstances.").  To hold otherwise would mean that virtually every examination could be recorded, a contradiction of the majority rule requiring a special need.[6]  Furthermore, the presence of an observer is sufficient guaranty of keeping the examiner honest.

Accordingly, the Court concludes that a condition allowing one parent or guardian to be present during a child's examination is warranted in this case.  However, the examinations shall not be recorded, unless Defendant consents.

### C. Condition Three — Providing reasonable scheduling accommodations for the examinations.

Plaintiffs request reasonable scheduling accommodations for the examinations.  Pls. Br. at 9.  In particular, Plaintiff C.W. Doe and his family currently live in Florida.  Id.  Plaintiffs argue that Defendant "should be required to accommodate [C.W. Doe's] family so that any tests that the Court requires occur in a single day."  Id.  Plaintiffs have also notified Defendant that Plaintiff M.D. Doe's father will be out of town between March 31 and April 2, and is unable to changes those dates.  Id. at 10.  As of March 19, 2015, Plaintiffs had not received a response from Defendant about this scheduling conflict.  Id.

---

[6] For this reason, the Court must respectfully disagree with the decision in Kuslick v Roszczewski, No. 09-12307-BC, 2012 WL 899355 (E.D. Mich. Mar. 16, 2012), allowing recordings on the theory that examiners' independence from counsel might reasonably be questioned.  Notably, the court did not acknowledge the majority rule and may not have been aware of it.

In her reply brief, Defendant claims that "a new schedule has been adopted which apparently addresses all of the practical scheduling concerns plaintiffs could have had."  Def. Reply at 5 (Dkt. 155).

Regarding this condition, the Court agrees with Plaintiffs that, in the event these difficulties have not already been resolved, reasonable accommodations should be afforded these particular Plaintiffs.   Therefore, Defendant shall make a good-faith effort to resolve any scheduling conflict for their examinations.  If the parties cannot resolve this issue, the Court will select the date for the examinations.

### D.  Condition Four — No interviewing or testing of Plaintiffs' parents

Plaintiffs object to Defendant's efforts to test and interview Plaintiffs' parents.  Pls. Resp. at 4-5; Pls. Br. at 4, 10.  According to Plaintiffs, the parents' deposition testimony is sufficient to provide Plaintiffs' background medical history, such that an interview is not necessary.  Pls. Br. at 10-11.  Plaintiffs further claim that the parents' physical and mental conditions are not in controversy.  Id. at 11.  In support of their argument, Plaintiffs cite two non-binding cases.  Pls. Br. at 10 (citing P.S. v. The Farm, Inc., No. 07-2210-JWL-DJW, 2008 WL 4198597 (D. Kan. Sept. 11, 2008) (Waxse, Mag. J.); M.S. v. Cedar Bride Academy, No. 1:08-CV-2271, 2011 WL 1838885 (W.D. Pa. 2011) (Carlson, Mag. J.)).

In her reply brief, Defendant states that the interviews of Plaintiffs' parents would be "no different than a history taken of a person otherwise being examined under the rule."  Def. Reply at 4.  Defendant claims the interviews are "designed to facilitate the process and allow parents to be free to respond without the necessity of attending to the children."  Id.  Defendant further states that Plaintiff K.H. Doe's parents were interviewed by Plaintiffs' expert "while the child

13

was being tested." Id.  Defendant has failed to provide legal authority in support of a right to question Plaintiffs' parents under Rule 35.

To the extent Defendant seeks to interview or question Plaintiffs' parents, the Court agrees with Plaintiffs.  Although Rule 35 provides the Court with the authority to order a neuropsychological examination of Plaintiffs, it does not require that Plaintiffs' parents be subjected to interviewing or questioning by Defendant's expert. M.S., 2011 WL 1838885, at *5 (recognizing that "a number of cases have held that the Court's authority to order psychiatric examinations under Rule 35 does not also entail the power to compel a child's parents to cooperate with interviews as part of the examination of their child"); P.S., 2008 WL 4198597, at *3 ("While the Court may enter an order under Fed. R. Civ. P. 35 which specifies the conditions and the scope of the examination of the person ordered to submit to an examination, nothing in Fed. R. Civ. P. 35 gives the Court authority to require a person who is not being examined to provide certain information to the examiner.").  Between Plaintiffs' parents' deposition testimony, Plaintiffs' medical records, and the recently received examination information from Plaintiffs' expert, Dr. Huffman has sufficient information to determine which testing procedures are most appropriate.

Insofar as Plaintiffs object to the testing of Plaintiffs' parents, the Court need not decide Plaintiffs' objection, because Defendant's motion clearly seeks the neuropsychological examination of Plaintiffs only, not Plaintiffs' parents. See Def. Mot. at 6 ("Defendant requests this Honorable Court to issue Orders allowing the examination of testing of the plaintiff minors on the dates and times set forth in the prior notices and proposed Orders without further condition and specifically not allowing the recording or observing of the examinations or

testings." (emphasis added)); Def. Br. at 14-15 (same). There is no indication that Defendant seeks to conduct any neuropsychological examination of the parents, in addition to Plaintiffs.

Accordingly, the Court concludes that a condition preventing Defendant's expert from interviewing or questioning Plaintiffs' parents is warranted in this case. Because Defendant seeks to examine only Plaintiffs, the Court concludes that Plaintiffs have failed to establish good cause for a condition preventing Defendant's expert from testing Plaintiffs' parents.

## V.  CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant Moore's motion for physical and mental examination pursuant to Rule 35(a)(2) (Dkt. 148). The parties shall submit a proposed stipulated order specifying the time, place, manner, and scope of the examinations, as well as the person or persons who will perform the examinations, on or before March 31, 2015. See Fed. R. Civ. P. 35(a)(2)(B). The proposed order shall also include the following conditions: (i) Plaintiffs are permitted to have one parent or guardian present during the examinations, who shall not interfere with the examinations, and whose observations will be subject to provisions to prevent inappropriate disclosure; (ii) Defendant shall make a good-faith effort to resolve any scheduling conflict for the examinations of Plaintiffs C.W. Doe and M.D. Doe; and (iii) Defendant's expert shall not interview or question Plaintiffs' parents.

SO ORDERED.

Dated:  March 30, 2015                          s/Mark A. Goldsmith
        Detroit, Michigan                       MARK A. GOLDSMITH
                                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2015.

                                                s/Carrie Haddon
                                                Case Manager